IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JASON E. MORRIS,

                    Plaintiff,

          v.

UNITED STATES OF AMERICA and
JAMES BOUCHARD,

                    Defendants.

CIVIL ACTION

No. 1:06-CV-2535-GGB

## **FINAL ORDER**

Plaintiff Jason E. Morris filed this civil action on October 20, 2006, against the

Untied States of America and James Bouchard, alleging negligence under the Federal

Tort Claims Act, 28 U.S.C. § 2671, *et seq.* The parties consented to jurisdiction before

a magistrate judge on January 24, 2007. (See Docs. 15, 17.)

This action is presently before the Court on the United States of America's

Motion to Dismiss [Doc. 7], the parties' Joint Motion to Stay Proceedings [Doc. 27],

the United States' Motion to File Surrebuttal in Support of its Motion to Dismiss [Doc.

29], and the United States' Motion for an Enlargement of Time in which to File

Responsive Pleading [Doc. 30]. For reasons discussed below, Defendant's Motion to

Dismiss [Doc. 7] is **GRANTED**.  For this reason, the remaining motions [Docs. 27, 29, 30] are **DENIED as moot**.

## I.  FACTS

After graduating from podiatry school, Plaintiff joined the staff of the Veterans Affairs Medical Center in Decatur, Georgia ("VA Hospital") in the podiatric residency program.  Plaintiff's residency at the VA Hospital lasted for two years.  Thereafter, he obtained one additional year of surgical training at a private facility.  Plaintiff then took and passed a certifying examination administered by the American Board of Podiatric Surgery.  Plaintiff was denied certification, however, because the second year of his residency at the VA Hospital had not been accredited by the Council on Podiatric Medical Education ("CPME").

A handbook issued by the Veterans Health Administration entitled, *Podiatry Services for Veterans Health Administration Medical Facilities,* states that podiatric residency programs "affiliated with VHA facilities must be accredited by the CPME" and that "[t]he residency program director is responsible for . . . ensuring that the program is in compliance with the policies of the respective accrediting and/or certifying body." VHA Handbook 1122.1 ¶¶ 12(b), 14(a) (2001), http://www1.va.gov/

2

vhapublications/ViewPublication.asp?pub_ID=370.    At the time of Plaintiff's residency, Defendant James Bouchard was the podiatric residency program director at the VA Hospital in Decatur.  Plaintiff contends that Dr. Bouchard negligently failed to obtain CPME accreditation, resulting in Plaintiff's inability to obtain Board certification.

## II.    <u>STANDARD OF REVIEW</u>

Defendant brings its Motion to Dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, which permits challenges to subject matter jurisdiction. Unlike Rule 12(b)(6), Rule 12(b)(1) permits this Court to consider evidence outside the pleadings without converting the motion to a motion for summary judgment.  <u>See Morrison v. Amway Corp.</u>, 323 F.3d 920, 924-25 (11th Cir. 2003); <u>Lawrence v. Dunbar</u>, 919 F.2d 1525, 1529 (11th Cir. 1990).  "[T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional issue."  <u>Morrison</u>, 323 F.3d at 925.  Rule 12(b)(1), however, is not applicable to every jurisdictional challenge.  It applies only "[i]f the facts necessary to sustain jurisdiction *do not implicate the merits of plaintiff's cause of action."* <u>Morrison</u>, 323 F.3d at 925 (quoting <u>Garcia v. Copenhaver, Bell & Associates, M.D.,</u>

3

P.A., 104 F.3d 1256, 1261 (11th Cir. 1997)(emphasis added)).  Plaintiff argues that

Rule 12(b)(1) does not apply in this case and that the Court should convert Defendant's

motion to a motion for summary judgment.

It is axiomatic that the United States is entitled to sovereign immunity and may

not be sued absent waiver of that immunity.  E.g., F.D.I.C. v. Meyer, 510 U.S. 471,

475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994).  Moreover, "the 'terms of [the United

States'] consent to be sued in any court define that court's jurisdiction to entertain

suit.'"  F.D.I.C., 510 U.S. at 475 (quoting United States v. Sherwood, 312 U.S. 584,

586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)).  In this case, the terms of the United States'

consent are found in the Federal Tort Claims Act.  Subject matter jurisdiction is absent,

therefore, if Plaintiff cannot state a claim under that Act.  See, e.g., Ochran v. United

States, 273 F.3d 1315, 1318 (11th Cir. 2001).

Challenges to subject matter jurisdiction can take one of two forms: a "facial

attack" on the complaint or a "factual attack."  Lawrence, 919 F.2d at 1528-29.

> Facial attacks on the complaint require the court merely to
> look and see if the plaintiff has sufficiently alleged a basis
> of subject matter jurisdiction, and the allegations in his
> complaint [as with motions under Rule 12(b)(6)] are taken
> as true for the purposes of the motion.  Factual attacks, on
> the other hand, challenge the existence of subject matter
> jurisdiction in fact, irrespective of the pleadings, and matters

> outside the pleadings, such as testimony and affidavits, are considered.

Lawrence, 919 F.2d at 1529 (citations, internal quotation marks, and internal brackets omitted).  If the merit of the plaintiff's claim is implicated, "'[t]he proper course of action . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case.'"  Garcia, 104 F.3d at 1261 (quoting Williamson v. Tucker, 645 F.2d 404, 415 (5th Cir. May 1981)).  When this occurs, the defendant must proceed under Rule 12(b)(6) or Rule 56, "both of which place great restrictions on the district court's discretion."  Id.

Plaintiff argues that Rule 56 is applicable in this case because Defendant attacks the merit of his claim and relies in part on affidavits and "other evidence" not previously in the record.  (Doc. 13 at 1, 7-10).  The Court agrees that Defendant's motion attacks the merit of Plaintiff's claim and therefor finds that Rule 12(b)(1) is not applicable.  The Court does not agree, however, that Rule 56 is applicable.  Resolution of Defendant's motion does not require reference to any information outside the pleadings other than published administrative documents, of which this Court may take judicial notice.  See Fed.R.Evid. 201(b)(stating that judicial notice may be taken of a fact that is "not subject to reasonable dispute," such as when the fact is "capable of

5

accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"); <u>Kramer v. Time Warner, Inc.</u>, 937 F.2d 767, 774 (2d Cir. 1991)(finding that judicial notice may be taken of documents filed with a federal agency without converting a motion to dismiss into a motion for summary judgment); <u>see</u> <u>also</u> <u>Brooks v. Blue Cross & Blue Shield of Florida, Inc.</u>, 116 F.3d 1364, 1369 (11th Cir. 1997)("where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment").  Defendant's argument focuses on legal issues, not the unique facts of Plaintiff's claim. Accordingly, the Court finds that the standards of Rule 12(b)(6) are applicable.[1]

---

[1]Plaintiff's argument regarding Rule 8(a) of the Federal Rules of Civil Procedure (<u>see</u> Doc. 13 at 11-14) is meritless.  As Defendant states, "Plaintiff's argument that he is not required to allege a negligence claim with specificity misstates the United States' challenge to his Complaint. . . . [T]he issue here is not simply one of proper pleading under Rule 8(a). . . . The United States is not challenging the form of plaintiff's pleading; it is challenging the plaintiff's failure to allege facts that state a claim of negligence."  (Doc. 22 at 3-4).  There is no dispute in this case that Plaintiff relies on O.C.G.A. § 51-1-6 and VHA Handbook 1122.1 in support of his claim (<u>see</u> below). The dispute concerns how these provisions should be interpreted as a matter of law.

6

Under Rule 12(b)(6), this Court may dismiss a complaint for failure to state a claim only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). All of Plaintiff's factual allegations must be accepted as true, and all reasonable inferences must be construed in the light most favorable to Plaintiff. Harris v. Proctor & Gamble Cellulose Co., 73 F.3d 321, 324 (11th Cir. 1996).

## III.    THE FEDERAL TORT CLAIMS ACT

The Federal Tort Claims Act ("FTCA") provides the exclusive remedy for tort claims against the United States and its employees. See 28 U.S.C. § 2679(b)(1). It applies to all civil claims –

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). The Government's liability under the FTCA is limited "to the extent that a private individual would be held liable under like circumstances." 28

7

U.S.C. § 2674.  The law governing liability is that of the place where the alleged negligence occurred, 28 U.S.C. § 1346(b)(1), which in this case is Georgia. Accordingly, Georgia law applies.

To prove a negligence claim under Georgia law, Plaintiff "must establish four elements: duty, breach of duty, proximate cause, and actual damage." Amick v. BM & KM, Inc., 275 F.Supp.2d 1378, 1381 (N.D.Ga. 2003)(citing Bradley Center, Inc. v. Wessner, 250 Ga. 199, 200, 296 S.E.2d 693 (1982)).  The "threshold issue . . . is whether, and to what extent, the defendant owes the plaintiff a duty of care." City of Rome v. Jordan, 263 Ga. 26, 27, 426 S.E.2d 861 (1993).  Whether such a legally enforceable duty exists is a question of law to be decided by the court.  City of Rome, 263 Ga. at 27.

Plaintiff relies on Georgia's "negligence per se" statute, O.C.G.A. § 51-1-6, to establish the duty element of his negligence claim.  "[N]egligence per se arises when a defendant violates a statute or ordinance, satisfying, as a matter of law, the first two elements of a negligence claim" Amick, 275 F.Supp.2d at 1381 (citing Hubbard v. Department of Transp., 256 Ga.App. 342, 349, 568 S.E.2d 559 (2002)).  Section 51-1-6 of the Georgia Code states:

8

> When the law requires a person to perform an act for the
> benefit of another or to refrain from doing an act which may
> injure another, although no cause of action is given in
> express terms, the injured party may recover for the breach
> of such legal duty if he suffers damage thereby.

Plaintiff contends that VHA Handbook 1122.1 established a legal duty requiring Dr. Bouchard to obtain CPME certification of the VHA Hospital's podiatric residency program and that he negligently failed to do so.

Analysis of Plaintiff's claim requires consideration of several factors involving both federal and state law.  The Court will first address whether VHA Handbook 1122.1 constitutes "the law" within the meaning of § 51-1-6 and will conclude that it does not.  The Court will then consider other requirements of § 51-1-6 of the Georgia Code and will conclude that, even if VHA Handbook 1122.1 were "the law," Plaintiff is not entitled to relief because it did not require Dr. Bouchard to act "for the benefit of" podiatry residents within the meaning of § 51-1-6.

### A.    **"The Law"**

Georgia's negligence per se statute applies only when "*the law* requires a person to perform an act . . . ."  O.C.G.A. § 51-1-6 (emphasis added).  Georgia courts have held that "the law" to which § 51-1-6 refers includes violations of statutes and

"mandatory regulations" that "impose a legal duty." <u>Hubbard,</u> 256 Ga.App. at 349-50 (citing <u>Central Anesthesia Assoc.,</u> 173 Ga.App. at 152-53); <u>Cardin v. Telfair Acres of Lowndes County, Inc.,</u> 195 Ga.App. 449, 450, 393 S.E.2d 731 (1990)("civil cause of action will lie for damages carried by a breach of a legal duty of diligence prescribed by a statute or by incorporated regulations enacted thereunder"); <u>Maner v. Dykes</u>, 55 Ga.App. 436, 190 S.E. 189, 192 (1937)(finding a violation of a valid rule of the Public Service Commission to be grounds for a negligence per se claim).

Plaintiff argues that Georgia law should be used to determine the legal force of VHA Handbook 1122.1.  (<u>See</u> Doc. 28 at 2, 4, 6-7).[2]  The Court does not agree. Whether a federal regulation establishes a legal duty – that is, whether it has the force and effect of law – can only be determined using federal law.  Georgia's negligence per se statue turns outward for sources of "the law"; it does not create new law.  <u>See Project Control Services, Inc. v. Reynolds,</u> 247 Ga.App. 889, 893, 545 S.E.2d 593 (2001)(stating that OCGA § 51-1-6 does not create a cause of action; "it simply authorizes the recovery of damages for a breach of a legal duty")(quoting <u>City of Buford v. Ward</u>, 212 Ga.App. 752, 755, 443 S.E.2d 279 (1994); <u>Landis v. Rockdale</u>

---

[2]Plaintiff also relies in part on 38 U.S.C. § 7302(a)(1), which plainly is enforceable federal law. For reasons discussed in Subsection B, however, § 7302(a)(1) is not applicable.

County, 206 Ga.App. 876, 879, 427 S.E.2d 286 (1992)(same). If a federal regulation does not have the force and effect of law under federal law, it simply is not "the law" within the meaning of § 51-1-6. Guidelines used for determining the legal force of Georgia regulations are not applicable. Cf. Kull v. Six Flags Over Georgia II, L.P., 264 Ga.App. 715, 716, 592 S.E.2d 143 (2003)(citing federal OHSA statute for its finding that OSHA regulations have the force and effect of law). Accordingly, the Court will turn to federal law to determine whether the VHA Handbooks[3] on which Plaintiff relies have the force and effect of law.

Under federal law, "not all agency policy pronouncements which find their way to the public can be considered to be regulations enforceable in federal court." Chasse v. Chasen, 595 F.2d 59, 62 (1st Cir. 1979)(finding that a Customs Service circular concerning employees' overtime did not have the force and effect of law for purposes of establishing subject matter jurisdiction under 28 U.S.C. § 1331). "In order for a regulation to have the 'force and effect of law,' it must have certain substantive characteristics and be the product of certain procedural requisites." Chrysler Corp. v. Brown, 441 U.S. 281, 301, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979). A substantive – or

---

[3]As will be discussed in Subsection B, Plaintiff also refers to VHA Handbook 1400.1.

"legislative-type rule" – is "one 'affecting individual rights and obligations.'"

<u>Chrysler Corp.</u>, 441 U.S. at 302.  "[I]nterpretative rules, general statements of policy,

or rules of agency organization, procedure, or practice" are not substantive.  <u>Id</u>. at 301.[4]

Furthermore, even if an agency pronouncement can be construed as substantive, this

"does not by itself give it the 'force and effect of law.'  The legislative power of the

United States is vested in the Congress, and the exercise of quasi-legislative authority

by governmental departments and agencies must be rooted in a grant of such power by

the Congress and subject to limitations which that body imposes."  <u>Chrysler Corp.</u> at

302.[5]  In short, a federal regulation has the force and effect of law only if the following

three requirements are satisfied: (1) it is substantive; (2) it was issued by an agency

with statutory authority to make such a pronouncement; and (3) it is "the product of

---

[4]The terms "legislative" and "interpretive" can be "somewhat misleading" because both types of rules "may share similar substantive traits."  <u>Production Tool Corp. v. Employment and Training Admin., DOL</u>, 688 F.2d 1161, 1166 (7th Cir. 1982).

[5]"The distinction between legislative and interpretive rules is generally drawn to determine one of two questions: 1) whether the APA's procedural requirements for rule making apply, or 2) whether the rule has the 'force and effect of law.'"  <u>Production Tool Corp. v. Employment and Training Admin., DOL</u>, 688 F.2d 1161, 1165 (7th Cir. 1982)(citations omitted).

certain procedural requisites." Each of these requirements is addressed separately below.

### 1.    <u>Substantive</u>

Plaintiff argues that the requirements of VHA Handbook 1122.1 are substantive because "they create individual rights, duties, and obligations. Specifically, they establish that residents accepting appointment at VHA facilities will receive training in accredited residency programs." (Doc. 28 at 7). The Handbook, however, does not specifically state that residents have such a right. Furthermore, it describes its purpose as implementation of *procedures* for podiatry care at VHA facilities. VHA Handbook 1122.1 ¶ 1. It also recognizes the possibility that not all podiatry residency programs at VHA facilities will be accredited. <u>See</u> <u>id</u>. ¶ 15(d)("VHA podiatry residency programs will not receive trainee support unless they are accredited by CPME. Those VHA facilities with emerging residency programs . . . must document . . . plans to seek accreditation . . . ."). Nonetheless, by employing imperative language, Handbook 1122.1 does plainly impose certain obligations on various VHA officials. For this reasons, the Court will assume, without finding, that VHA Handbook 1122.1 is substantive in nature.

AO 72A
(Rev.8/82)

## 2.   <u>Agency Authority</u>

The Handbook also appears to have been issued under congressional authorization.  The pertinent statute specifically instructs the VHA to develop and carry out a program of education and training of health personnel.  38 U.S.C. § 7302(a)(1).  The Under Secretary of Health, who is in charge of the VHA, is also authorized to "prescribe all regulations necessary to the administration of the Veterans Health Administration . . . ." 38 U.S.C. § 7304(a).  A grant of legislative authority to a federal agency need not "be specific before regulations promulgated pursuant to it can be binding on courts in a manner akin to statutes.  What is important is that the reviewing court reasonably be able to conclude that the grant of authority contemplates the regulations issued." <u>Chrysler Corp.</u>, 441 U.S. at 308.  Accordingly, the Court will also assume that the VHA had authority to issue Handbook 1122.1.

## 3.   <u>Procedural Requisites</u>

Nonetheless, one additional requirement must be satisfied before Handbook 1122.1 achieves the force and effect of law.  Promulgation of the Handbook "must [have] conform[ed] with any procedural requirements imposed by Congress.  For agency discretion is limited not only by substantive, statutory grants of authority, but

also by the procedural requirements which 'assure fairness and mature consideration of rules of general application.'" Chrysler Corp. at 303 (citations omitted).

The Administrative Procedures Act ("APA") requires agencies to afford interested persons general notice of proposed rulemaking and an opportunity to comment before a substantive rule is promulgated. 5 U.S.C. § 553(b),(c); Chrysler Corp. at 313. Interpretive rules and statements of policy, as well as matters "relating to agency management or personnel or to public property, loans, grants, benefits, or contracts" are excluded from these requirements. 5 U.S.C. § 553(a)(2), d(2). "[R]egulations subject to the APA cannot be afforded the 'force and effect of law' if not promulgated pursuant to the statutory procedural minimum found in that Act." Chrysler Corp. at 313.

Specifically, the APA requires publication of proposed substantive rules in the Federal Register, followed by a period of time in which interested persons are provided an opportunity to participate in the rule-making process through submission of written data, views, or arguments. 5 U.S.C. § 553(a),(b). VHA Handbook 1122.1 was *not* promulgated in this manner. See VHA Handbook 1122.1 Transmittal Sheet (December 6, 2001). See also VHA Handbook 6330, *Veterans Health Administration Directives Management System Procedural Handbook* (1996) ¶ 5, http://www1.

va.gov/vhapublications/ViewPublication.asp?pub_ID=1327 (stating requirements for issuance of a VHA Handbook).[6]

VHA Handbook 1122.1 states that its purpose is to "describe[] procedures for implementation of foot and ankle care programs at VHA facilities." VHA Handbook 1122.1 ¶ 1. VHA officials apparently concluded that the rules at issue constitute mere policy and procedure, not mandatory regulations with the force and effect of law. Cf. Chrysler Corp., 411 U.S. at 315 (noting that the agency treated the regulations at issue as interpretive rules). This Court "need not decide whether these regulations are properly characterized as [policy and procedure]. It is enough that such regulations are not promulgated as substantive rules, and therefore not the product of procedures which Congress prescribed as necessary prerequisites to giving a regulation the binding effect of law." Id. For this reason, the Court finds that VHA Handbook 1122.1 does not have the force and effect of law and that Plaintiff cannot maintain a negligence claim under Georgia law or the FTCA. Cf. Bright v. Nimmo, 756 F.2d 1513, 1516-17 (11th Cir. 1985)(finding that VA manuals and guidelines relating to VA

---

[6]VHA Handbook 6330 states that its purpose is to provide required "procedures for preparing . . . VHA DMS [Directives Management System] issues . . . . VHA DMS issues include directives, handbooks, memorandums, notices, information letters, newsletters, program guides, training program guides, information bulletins, and pamphlets." VHA Handbook 6330, supra, ¶ 1.

loans and loan guarantees did not create substantive rights and therefore did not give rise to an implied cause of action against the VA); Schweiker v. Hansen, 450 U.S. 785, 789, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981)(finding that the Social Security Administration's internal claims manual had no legal force and that its violation did not bind the agency for purposes of estoppel); Kugel v. U.S., 947 F.2d 1504, 1507-08 (D.C.Cir. 1991)(relying on Schweiker to find that violation an internal FBI manual governing investigations, which was designed in part to protect targets of those investigations, did not constitute negligence per se for purposes of the FTCA).

Cases cited by Plaintiff – Thorpe v. Housing Authority of the City of Durham, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969); Fugere v. Derwinski, 972 F.2d 331 (Fed. Cir. 1992); and Montalvo v. Brown, 7 Vet.App. 312 (1995) – do not require a different result. Thorpe does not discuss the procedural requirements of the APA and, in any event, must be construed in light of Chrysler Corp., supra, a more recent, and therefore controlling, case. Fugere involved regulations that had been promulgated under the procedural requirements of the APA. See Fugere, 972 F.2d at 333-34. And Montalvo is unpersuasive because it relies solely on its interpretation of "substantive" and does not discuss other requirements specified in Chrysler Corp. See Montalvo, 7 Vet.App. at 314.

17

**B.**   **Requirements of § 51-1-6**

Although not required for a finding in Defendant's favor, the Court will also address additional requirements of § 51-1-6.  The success of a negligence claim under that statute depends in part on "(1) whether the injured person falls within the class of persons [the law] was intended to protect and (2) whether the harm complained of was the harm [the law] was intended to guard against."  Amick, 275 F.Supp.2d at 1382 (quoting Central Anesthesia Assocs. v. Worthy, 173 Ga.App. 150, 153, 325 S.E.2d 819 (1984)); accord Odem v. Pace Acad., 235 Ga.App. 648, 657, 510 S.E.2d 326 (1998); see also Hubbard, 256 Ga.App. at 350; Huckabee v. Grace, 48 Ga.App. 621, 632, 173 S.E. 744, 750 (1934).  "Where the cited statute does not govern the relationship between the parties, no cause of action exists, and recovery of damages based on violation of that particular statute is unwarranted."  Id.

In this case, the underlying statutory provision establishing the Veterans Health Administration describes the VHA's "primary function" as provision of "a complete medical and hospital service for the medical care and treatment of veterans."  38 U.S.C. § 7301(b).  The statute also instructs the VHA to develop a training program for healthcare personnel and identifies a secondary function:

18

> In order to carry out more effectively the primary function
> of the Veterans Health Administration *and in order to assist*
> *in providing an adequate supply of health personnel to the*
> *Nation,* the Secretary . . . shall develop and carry out a
> program of education and training of health personnel.

38 U.S.C. § 7302(a)(1)(emphasis added).  Plaintiff relies in part on the italicized

portion of this statute for his contention that VHA Handbook 1122.1 provides rules

designed for the protection of podiatry residents.  (See Doc. 28 at 8).  Although the

VHA's training program certainly benefits healthcare personnel *indirectly,* the

motivation for its establishment, as stated in the statute, was to provide an adequate

supply of healthcare personnel to the citizenry as a whole.  Put differently, the class of

persons the statute was designed to protect is *patients*, not doctors, and the injury it

was designed to protect against is *inadequate healthcare*, not a doctor's inability to

qualify for a particular certification.

Plaintiff also relies on language in VHA Handbook 1122.1, as well as VHA

Handbook 1400.1, entitled, *Resident Supervision*, which governs all residency

programs at VHA hospitals.  See VHA Handbook 1400.1 (2005), http://www1.va.

gov/vhapublications/ViewPublication.asp?pub_ID=1289.  As noted above, Handbook

1122.1 states that the program director of the podiatry training program is responsible

for ensuring that the program is in compliance with the policies of the CPME.  VHA

AO 72A
(Rev.8/82)

Handbook 1122.1, <u>supra</u>, ¶¶ 12(b), 14(a).  VHA Handbook 1400.1 "provides the procedural requirements pertaining to the supervision of residents and focuses on resident supervision from the educational perspective."  VHA Handbook 1400.1 ¶ 1.  "The intent of this Handbook is to ensure that patients are cared for by clinicians who are qualified to deliver that care and that this care is documented appropriately and accurately in the patient record."  <u>Id</u>. ¶ 2(c).  Handbook 1400.1 also states that VHA hospitals "must comply with the institutional requirements and accreditation standards of . . . health care accreditation bodies," including CPME, <u>id</u>. ¶¶ 2(b), 3(d), and that residency programs "must be accredited or certified as appropriate and as described in [¶ 3(d)]," <u>id</u>. ¶ 4(k).  Finally, in a passage on which Plaintiff relies, the Handbook states: "The requirements of the various certifying bodies . . . must be incorporated into Department of Veterans Affairs (VA) training programs and fulfilled through local facility policy *to ensure that each successful program graduate is eligible to sit for a certifying examination."*  <u>Id</u>. ¶ 3(e)(emphasis added).

The Court finds that the handful of phrases on which Plaintiff relies from VHA Handbooks 1122.1 and 1400.1 does not establish that the Handbooks, when considered as a whole, were intended to protect medical residents from the harm about which Plaintiff complains.  Both of the Handbooks are approximately 20 pages long and

focus primarily on measures designed to ensure the quality of care given VHA patients.  Handbook 1400.1 prominently states, for example:

> In a health care system where patient care and the training of health care professionals occur together, there must be a clear delineation of responsibilities *to ensure that qualified practitioners provide patient care,* whether they are trainees or full-time staff.

VHA Handbook 1400.1 ¶ 2 (emphasis added).  The Handbook adds that "[t]he quality of patient care, patient safety, and the success of the educational experience are inexorably linked and mutually enhancing," VHA Handbook 1400.1 ¶ 2(d), thereby implying that the success of the educational program is a secondary objective needed to ensure the quality of patient care.

For these reasons, the Court finds that VHA Handbooks 1122.1 and 1400.1 were not designed to protect medical residents or to guard against the harm about which Plaintiff complains and therefore do not create the duty of care Plaintiff alleges.  Cf. Benefit Support, Inc. v. Hall County, 281 Ga.App. 825, 831-32, 637 S.E.2d 763 (2006)(finding that statutes requiring insurance counselors to be licensed were not designed to protect or benefit providers of insurance, but rather the counselor's clients, making O.C.G.A. § 51-1-6 unavailable to an insurance provider); Anderson v. Turton Development, Inc., 225 Ga.App. 270, 273, 483 S.E.2d 597, 600 (1997)(finding no

negligence pre se based on the Georgia Handicap Act where the plaintiff, who had

been injured by a non-compliant handicap ramp, was not herself handicapped); <u>Potts</u>

<u>v. Fidelity Fruit & Produce Co., Inc</u>., 165 Ga.App. 546, 546, 301 S.E.2d 903, 904

(1983)(finding no negligence per se based on a violation of the Food Act where a

worker was bitten by spiders while unloading bananas because the Food Act was

designed to protect consumers, not workers).


## IV.   <u>REMAINING DEFENDANT AND CLAIM</u>

Plaintiff brings his FTCA claim against both the United States and Dr.

Bouchard.  Although Dr. Bouchard did not file a motion to dismiss, there can be no

dispute that Plaintiff's FTCA claim against him must fail.  "Section 5 of the Liability

Reform Act states that '[t]he remedy' against the Government under the FTCA 'is

exclusive of any other civil action or proceeding for money damages . . . against the

employee' and then reemphasizes that '[a]ny other civil action or proceeding for

money damages . . . against the employee . . . is precluded.'  28 U.S.C. § 2679(b)(1)."

<u>United States v. Smith</u>, 499 U.S. 160, 165-66, 111 S.Ct. 1180, 113 L.Ed.2d 134 (1991).

For this reason, the FTCA is "the exclusive mode of recovery for the tort of a

Government employee even when the FTCA itself precludes Government liability."
<u>Smith</u>, 499 U.S. at 166.

Finally, Plaintiff's amended complaint includes a claim for negligent retention
against the Government.[7]  (Doc. 26 ¶ 55.)  Although Defendant has not yet had an
opportunity to move for dismissal of this claim, given the Court's findings with respect
to Plaintiff's claim of negligence per se, his negligent retention claim must also be
dismissed for want of an underlying tort.  <u>See</u> <u>Tomczyk v. Jocks & Jills Restaurants,</u>
<u>LLC</u>, 198 Fed.Appx. 804, 815 (11th Cir. 2006)(finding that jury did not have the
option of finding in favor of the plaintiff with respect to a negligent retention claim
under Georgia law where the jury found in favor of the defendant with respect to the
underlying tort); <u>MARTA v. Mosley</u>, 280 Ga.App. 486, 634 S.E.2d 466 (2006)("A
claim for negligent retention is necessarily derivative and can only survive summary
judgment to the extent that the underlying substantive claims survive the same.");
<u>Eckhardt v. Yerkes Regional Primate Center</u>, 254 Ga.App. 38, 38, 561 S.E.2d 164
(2002)("As we found in Division 1, the appellants' claim for wrongful termination is
without merit. Therefore, there is no underlying tort on which to base a negligent
retention claim."); <u>Phinazee v. Interstate Nationalease</u>, 237 Ga.App. 39, 41, 514 S.E.2d

---

[7]This claim also must proceed under the FTCA.  <u>See</u> 28 U.S.C. § 2679(b)(1).

23

843 (1999)("No valid claim for intentional infliction of emotional distress having been sustained, the essentially derivative claim of negligent retention also fails."); <u>Coleman v. Housing Authority of Americus</u>, 191 Ga.App. 166, 167, 381 S.E.2d 303 (1989)(stating that, without sufficient evidence to support an action for intentional infliction of emotional distress against one defendant, "the causes of action against the other defendants [including negligent hiring], which are essentially derivative, must fall."); <u>Orquiola v. National City Mortg. Co.</u>, *slip op.*, No. 1:05-CV-0783-JOF, 2007 WL 174412, *3 (N.D.Ga. Jan. 16, 2007)(stating that "it is not clear that a negligent retention claim can survive on its own without an underlying state law tort," but adding that "Georgia courts have described negligent retention as a 'derivative' claim thus requiring an underlying tort").

## V.   **CONCLUSION**

For the foregoing reasons, Defendant United States of America's Motion to Dismiss [Doc. 7] is **GRANTED** and this action is hereby **DISMISSED with prejudice** with respect to *all claims and all defendants*.  The parties' Joint Motion to Stay Proceedings [Doc. 27], the United States' Motion to File Surrebuttal in Support of its Motion to Dismiss [Doc. 29], and the United States' Motion for an Enlargement

24

of Time in which to File Responsive Pleading [Doc. 30] are all **DENIED as moot**.

The Clerk of the Court is **DIRECTED** to enter judgment against Plaintiff and in favor

of Defendants.

      **IT IS SO ORDERED** this 11th day of April, 2007.


_____
GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE

T:\FINAL.ORD\MorrisJasonMD.wpd

25